Keely E. Duke
ISB 6044; ked@dukeevett.com
Molly E. Mitchell
ISB 10035; mem@dukeevett.com
Duke Evett, PLLC
1087 W. River Street, Suite 300
P.O. Box 7387
Boise, ID 83702
Telephone (208) 342-3310
Facsimile (208) 342-3299
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

IN THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS HEALTH SYSTEM, INC. an Idaho corporation,<br><br>    Plaintiff,<br>v.<br><br>TEHUM CARE SERVICES, INC., formerly known as Corizon Health, Inc. a Texas corporation, VALITAS INTERMEDIATE HOLDINGS, INC., a Delaware corporation, CHS TX, INC., a Texas corporation, YESCARE CORP., a Texas corporation, JOHN DOES ENTITIES I-X, and JOHN DOE INDIVIDUALS I-X.<br><br>    Defendants. | Case No._____<br><br>**COMPLAINT** |

Plaintiff Saint Alphonsus Health System, Inc. ("Saint Alphonsus"), by and through its attorneys of record, Duke Evett, PLLC, as a Complaint against Defendants Tehum Care Services, Inc. (formerly Corizon Health, Inc.), Valitas Intermediate Holdings, Inc., CHS TX, Inc., YesCare Corp., John Doe Entities I through X, and John Doe Individuals I through X, pleads and alleges as follows:

**COMPLAINT -1**

## I.    PARTIES

1. Plaintiff Saint Alphonsus Health System, Inc. is an Idaho corporation doing business in Idaho with its primary place of business in Ada County, Idaho. Saint Alphonsus Health System, Inc. provides medical services through hospitals, including Saint Alphonsus Regional Medical Center, Inc., located in Boise, Idaho, and employs medical providers throughout the Treasure Valley.

2. Corizon Health, Inc. was a Delaware corporation doing business in Idaho during the timeframe at issue, with its primary place of business in Tennessee. Corizon Health, Inc. converted to a Texas corporation in April 2022. Corizon Health, Inc. underwent a divisional merger whereby it split into two corporations and allocated its corporate assets and liabilities amongst the two corporations. Corizon Health, Inc. survived the divisional merger and a new entity, CHS TX, Inc., inherited all of Corizon Health, Inc.'s active contracts, and nearly all of Corizon's employees, cash, equipment, real estate, and other assets. Corizon Health, Inc. retained all of its expired contracts and their liabilities, one million dollars in cash, the right to collect on its insurance policies, and the right to collect up to four million dollars under a funding agreement with an affiliated entity if certain conditions were met. On June 1, 2022, Corizon Health, Inc. filed a Certificate of Amendment with the Texas Secretary of State changing its name from Corizon Health, Inc. to Tehum Care Services, Inc. Tehum Care Services, Inc. has its principal place of business in Tennessee.

3. Valitas Intermediate Holdings, Inc. is a Delaware corporation and is the sole shareholder of Tehum Care Services, Inc. (formerly Corizon Health, Inc.).

4. CHS TX, Inc. is a Texas corporation that inherited all of Corizon Health, Inc.'s active contracts, and nearly all of Corizon's employees, cash, equipment, real estate, and other

**COMPLAINT -2**

assets, leaving Corizon Health, Inc. grossly underfunded to cover its liabilities. CHS TX, Inc.'s principal place of business is in Tennessee.

5.     YesCare Corp. is a Texas Corporation that acquired CHS TX, Inc. after the divisional merger and CHS TX, Inc. has been doing business as "YesCare."

6.     John Doe Entities are business entities that are shareholders of Tehum Care Services, Inc., CHS TX, Inc., and/or YesCare Corp. and/or shareholders of business entities that are shareholders of Tehum Care Services, Inc., CHS TX., Inc., and/or YesCare Corp. On information and belief, the owners of Tehum Care Services, Inc., CHS TX, Inc. and YesCare Corp. have created various holding companies and other entities in an attempt to insulate themselves from personal liability arising out of their abuses of the corporate form.

7.     John Doe Individuals are individual directors, officers, and shareholders that orchestrated and perpetrated the divisional merger scheme aimed at evading Corizon Health, Inc.'s substantial liabilities.

## II.     JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.     This Court has personal jurisdiction over Tehum Care Services, Inc. because its predecessor entity, Corizon Health, Inc. conducted business within the state of Idaho during the at-issue time.

10.    This Court has personal jurisdiction over Valitas Intermediate Holdings, Inc. because it is the alter-ego of Tehum Care Services, Inc., which conducted business within the state of Idaho during the at-issue time as Corizon Health, Inc.

11. This Court has personal jurisdiction over CHS TX, Inc. because it is the successor of Corizon Health, Inc., an entity that conducted business within the state of Idaho during the at-issue time.

12. This Court has personal jurisdiction over YesCare Corp. because it is the alter ego of the successor of Corizon Health, Inc., an entity that conducted business within the state of Idaho during the at-issue time.

13. This Court has personal jurisdiction over John Doe Entities I through X because they have ownership interests in Tehum Care Services, Inc., CHS TX, Inc. and YesCare Corp. and were created for purposes of insulating the owners of these companies from personal liability arising out of their abuses of the corporate form, including using the corporate form to evade Corizon Health, Inc.'s liabilities arising out of business conducted in Idaho during the at-issue time.

14. This Court has personal jurisdiction over John Doe Individuals I through X because they orchestrated and perpetrated the divisional merger scheme aimed at evading Corizon Health, Inc.'s substantial liabilities, including liabilities arising out of business Corizon Health, Inc. conducted in Idaho during the at-issue time.

15. Venue is proper pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in Ada County, Idaho.

### III.   FACTS

**Corizon's Nonpayment of Amounts Owed for Medical Care at the Statutory Reimbursement Rate**

16. Corizon Health, Inc. was a privatized medical provider at the time of the medical care at issue in this case.

17. Related to the timeframe at issue in this lawsuit, Corizon Health, Inc. and

Corizon, LLC, an entity that was merged into Corizon Health, Inc. effective May 5, 2022 (collectively "Corizon"), was under contract with the State of Idaho/Idaho Department of Correction ("IDOC") for a period of time, including from January 1, 2020 through September 30, 2021, to pay for medical services provided to inmates in the custody of the Idaho Department of Correction ("IDOC inmates"). As part of its contractual obligations with IDOC and as it relates to this lawsuit, Corizon was paid an agreed-to rate by IDOC in exchange for Corizon agreeing to pay for all medical care provided to IDOC inmates by outside medical service providers like Saint Alphonsus.

18. The contract between IDOC and Corizon required Corizon, not IDOC, to be responsible for and pay health care providers, including Saint Alphonsus, for medical services provided to IDOC inmates during the contract timeframe, including from January 1, 2020 through September 30, 2021.

19. On March 26, 2018, Idaho Code § 20-237B was amended to include a privatized medical provider under contract with IDOC, like Corizon, as referenced in the below excerpt of amended Idaho Code § 20-237B:

```
     20-237B.  MEDICAL COSTS OF STATE PRISONERS HOUSED IN CORRECTIONAL
FACILITIES. (1) The state board of correction or any privatized medical
provider under contract with the department of correction shall pay to
a provider of a medical service, other than hospital inpatient or
outpatient services, for any and all prisoners, committed to the
custody of the department of correction, confined in a correctional
facility, as defined in section 18-101A(1), Idaho Code, an amount equal
to the reimbursement rates of the Idaho medicaid reimbursement fee
schedule in place at the time services are provided. Hospitals shall be
paid for inpatient and outpatient facility services provided to such
prisoners in an amount equal to the interim Idaho medicaid rates in
place at the time of service except for outpatient services paid by
Idaho medicaid according to the Idaho medicaid fee schedule. These
limitations apply to all medical care services provided outside the
facility, including inpatient and outpatient hospitalizations,
emergency services, professional services, durable and nondurable
goods, prescription drugs and medications provided to any and all
prisoners confined in a correctional facility, as defined in section
18-101A(1), Idaho Code. For services that are not included in the Idaho
```

As such, for the claims at issue in this case from January 1, 2020 through September 30, 2021, the amended version of Idaho Code § 20-237B statutorily defined the amounts owed to Saint Alphonsus by Corizon.

20. From January 1, 2020 through September 30, 2021, Corizon requested and secured medical services for IDOC inmates from Saint Alphonsus. Idaho Code § 20-237B required Corizon to reimburse Saint Alphonsus for such medical services and to do so at specific reimbursement rates defined by that statue.

21. Corizon failed to pay Saint Alphonsus for medical services provided by Saint Alphonsus to IDOC inmates from January 1, 2020 through September 30, 2021, in any amount, including at the rates of reimbursement required by Idaho Code § 20-237B.

22. Saint Alphonsus demanded multiple times of Corizon that it pay Saint Alphonsus for the medical services Saint Alphonsus provided to IDOC inmates at Corizon's request from January 1, 2020 through September 30, 2021.

23. Corizon has failed to pay Saint Alphonsus for the care rendered between January 1, 2020 through September 30, 2021 at the reimbursement rates required by Idaho Code § 20-237B.

24. As a result, Corizon failed to meet its statutory obligations pursuant to Idaho Code § 20-237B to pay Saint Alphonsus for care rendered between January 1, 2020 through September 30, 2021 at the reimbursement rates required by that statute.

25. As a result, Corizon, now Tehum Care Services, Inc., owes Saint Alphonsus over $2,000,000, as well as ongoing interest accruing thereon at the statutory rate of prejudgment interest.

**Defendants' Scheme to Avoid Liability for Amounts Owed to Saint Alphonsus – aka, "the Texas Two-Step"**

26.     Corizon Health, Inc. was deeply insolvent and, rather than declare bankruptcy, Corizon Health, Inc., through its sole shareholder, directors, officers, and the John Doe Entities and individuals, restructured its organization through a Texas divisional merger, whereby Corizon Health, Inc. split into two separate entities and allocated its assets and liabilities amongst those two entities to evade its liabilities.

27.     Corizon Health, Inc. did so knowing it owed over $2,000,000 to Saint Alphonsus. Saint Alphonsus had sent several demands to Corizon Health, Inc., the most recent of which was sent by Saint Alphonsus's counsel to Corizon Health, Inc.'s Chief Legal Officer, J. Scott King, on March 25, 2022. Jennifer Finger, a VP and Assistant General Counsel of Corizon Health, Inc., responded on April 8, 2022, stating Corizon Health, Inc. was "looking into the information provided and will get back you." Corizon Health, Inc. never "got back to" Saint Alphonsus, and has not paid any amount of the over $2,000,0000 it owes for health care services Saint Alphonsus provided to IDOC inmates at Corizon's request. Instead, Corizon Health, Inc. moved forward with a corporate restructuring described as the "Texas Two-Step" purposefully designed to leave Corizon Health, Inc. devoid of assets to cover its substantial liabilities, including the over $2,000,000 owed to Saint Alphonsus.

28.     To achieve this restructuring—and thereby attempt to evade its liabilities—Corizon Health, Inc. first converted from a Delaware corporation to a Texas corporation in April 2022. Corizon Health, Inc. did not conduct any business in Texas when it began the merger.

29.     Days later, three of its sister companies—Corizon, LLC, Valitas Health Services, Inc. and Corizon Health of New Jersey, LLC—merged into Corizon Health, Inc. pursuant to an Agreement and Plan of Combination Merger. Prior to this merger, (1) Corizon Health, Inc. was

the sole member of Corizon, LLC and Corizon Health New Jersey, LLC; (2) Valitas Health Services, Inc. was the sole shareholder of Corizon Health, Inc.; and (3) Valitas Intermediate Holdings, Inc. was the sole shareholder of Valitas Health Services, Inc. Valitas Intermediate Holdings, Inc. approved of this merger, whereby the respective assets and liabilities of each of the four entities were combined and vested in the surviving entity, Corizon Health, Inc. Only one person signed the Agreement and Plan of Combination Merger; J. Scott King signed the merger on behalf of all four entities in his capacity as "SVP and Chief Legal Officer" of each entity.

30. Corizon Health, Inc. then underwent a divisional merger, which it survived while also creating a new corporation, CHS TX, Inc., pursuant to an Agreement and Plan of Divisional Merger. This Agreement and Plan of Divisional Merger was approved by the board of directors of Corizon Health, Inc. and Valitas Intermediate Holdings, Inc.

31. The divisional merger allocated the bulk of Corizon Health Inc.'s assets to CHS TX, Inc., including all of Corizon Health, Inc.'s employees, all of Corizon Health, Inc.'s active contracts, and nearly all of Corizon's cash, equipment, real estate, and other assets.

32. Corizon Health, Inc. retained all of its expired contracts and their corresponding liabilities, one million dollars in cash, the right to collect on insurance policies, and the right to collect up to four million dollars under a funding agreement with an affiliated company if certain conditions were met.

33. Under the divisional merger plan, Corizon Health, Inc. and CHS TX, Inc. had the same sole shareholder: Valitas Intermediate Holdings.

34. CHS TX, Inc.'s Certificate of Formation authorizes the corporation to issue 15,000 shares at par value of $0.01, meaning the corporation's stock value is $15.00 (despite acquiring nearly all of pre-division Corizon Health, Inc.'s assets through the divisional merger).

35. CHS TX, Inc. was acquired by YesCare, Corp. after the divisional merger. CHS TX, Inc. then began doing business under the name "YesCare."

36. YesCare, Corp.'s Certificate of Formation authorizes the corporation to issue 1,000 shares at par value of $0.001, meaning the corporation's stock value is $1.00 (despite owning nearly all of pre-division Corizon Health, Inc.'s assets via the acquisition of CHS TX, Inc.).

37. Sara Tirschwell is the sole director of YesCare, Corp. Jeff Sholey is its CFO, J. Scott King is its CLO, and Gregory Ladele is its CMO.

38. The directors CHS TX, Inc. are Sara Tirschwell, J. Scott King, Jeff Sholey, and Gregory Ladele.

39. Sara Tirschwell is also a director of Tehum Care Services, Inc. Jeff Sholey is the CFO of Tehum Care Services, Inc., Gregory Ladele is the CMO, and J. Scott King is the Secretary.

40. Tehum Care Services, Inc. and CHS TX, Inc. both have addresses on Powell Court, Brentwood, Tennessee 37027.

41. Neither Corizon Health, Inc., Tehum Care Services, Inc., or CHS TX, Inc. have conducted any business in Texas following the divisional merger.

42. Despite its formation in January 2022, YesCare Corp.'s website holds itself out as having "40+ Years of innovation, patient care and reentry services" and claims to have provided care for over 1,000,000 patients from "475+" correctional facilities across the county. Thus, YesCare, Corp. has effectively stepped into the shoes of Corizon Health, Inc. for purposes of marketing while simultaneously dumping Corizon Health, Inc.'s extensive liabilities through the wrongful divisional merger orchestrated by its parent company, Valitas Intermediate Holdings,

Inc., and its directors, officers, and the John Doe Entities and Individuals.

## IV. CAUSES OF ACTION

### Count I
### Violation of Idaho Code § 20-237B
### Tehum Care Services, Inc.

43. Saint Alphonsus incorporates all previous allegations as though fully set forth herein.

44. From January 1, 2020 through September 30, 2021, Corizon remained a privatized medical provider under contract with IDOC.

45. As a privatized medical provider under contract with IDOC, from January 1, 2020 through September 30, 2021, Corizon requested and secured medical services for IDOC inmates from Saint Alphonsus.

46. As a privatized medical provider, amended Idaho Code § 20-237B required Corizon to reimburse Saint Alphonsus for such medical services and to do so at specific reimbursement rates identified in the statute.

47. Corizon, now Tehum Care Services, Inc., has failed to pay Saint Alphonsus for medical services provided by Saint Alphonsus to IDOC inmates from January 1, 2020 through September 30, 2021 at any amount, let alone at the rates of reimbursement required by amended Idaho Code § 20-237B.

48. Corizon, now Tehum Care Services, Inc., has not paid Saint Alphonsus for medical services provided to IDOC inmates as required by amended Idaho Code § 20-237B from January 1, 2020 through September 30, 2021. As a direct and proximate result of Corizon's violations of Idaho Code § 20-237B, Saint Alphonsus has been damaged in an amount significantly in excess of $75,000, plus prejudgment interest and attorneys' fees and costs.

## Count II
## Veil Piercing
## Valitas Intermediate Holdings, Inc. and John Doe Entities and Individuals

49. Saint Alphonsus incorporates all previous allegations as though fully set forth herein.

50. As the sole shareholder of Corizon Health, Inc., Valitas Intermediate Holdings, Inc. exercised dominion and control over Corizon Health, Inc., as well as the entities that were merged into Corizon Health, Inc.

51. Valitas Intermediate Holdings, Inc., the directors and officers of Corizon Health, Inc., and the John Doe Entities and Individuals exercised dominion and control over Corizon Health, Inc. to commit wrongful acts which have resulted in injury to Saint Alphonsus.

52. Specifically, knowing that Corizon Health, Inc. was insolvent, Valitas Intermediate Holdings, Inc., the directors and officers of Corizon Health, Inc., and the John Doe Entities and Individuals orchestrated the wrongful divisional merger of Corizon Health, Inc., which left Corizon Health, Inc. grossly underfunded to pay amounts it owed for medical care that hospitals, including Saint Alphonsus, had provided to inmates at the request of Corizon Health, Inc.

53. At the same time, Valitas Intermediate Holdings, Inc., the directors and officers of Corizon Health, Inc., and the John Doe Entities and Individuals formed a new company, CHS TX, Inc., which received nearly all of Corizon Health, Inc.'s assets without being responsible for Corizon Health, Inc.'s expired contracts. This included liability arising out of Corizon Health Inc.'s contract with the Idaho Department of Corrections, which ended on September 30, 2021.

54. Although the merger purportedly resulted in two separate entities, the substantial overlap in management between Corizon Health, Inc. (now Tehum Care Services, Inc.), CHS

TX, Inc., and YesCare, Corp. shows that YesCare Corp. has effectively stepped into Corizon Health, Inc.'s shoes and is carrying on as Corizon Health, Inc., albeit with a new name and some rebranding, without being saddled by the substantial amounts Corizon Health, Inc. owes to its creditors, including Saint Alphonsus.

55. Valitas Intermediate Holdings, Inc. and the John Does Entities and Individuals have wrongly manipulated the corporate form to evade liabilities owed by Corizon Health, Inc. (now Tehum Care Services, Inc.), to evade a statute (namely the payment obligations imposed by Idaho Code § 20-237B), to justify a wrong, and to perpetrate a fraud. The unity of interest and ownership between these Defendants and Corizon Health, Inc. (now Tehum Services, Inc.) is to a degree that separate personalities of the company and these Defendants no longer exist and if the acts of these Defendants are not treated as acts of the company, an inequitable result would follow.

56. Principles of fairness, equity and justice require the piercing of the corporate veil so as to hold Valitas Intermediate Holdings, Inc. and the John Doe Entities and Individuals liable for amounts Corizon Health, Inc. (now Tehum Care Services, Inc.) owes to Saint Alphonsus for medical care that was provided to IDOC inmates at the request of Corizon Health, Inc., which its sole shareholder has attempted to evade through a wrongful divisional merger.

57. Corizon, now Tehum Care Services, Inc., has not paid Saint Alphonsus for medical services provided to IDOC inmates as required by amended Idaho Code § 20-237B from January 1, 2020 through September 30, 2021. As a direct and proximate result of Corizon's violations of Idaho Code § 20-237B, Saint Alphonsus has been damaged in an amount significantly in excess of $75,000, plus prejudgment interest and attorneys' fees and costs.

58. Holding Valitas Intermediate Holdings, Inc. and John Doe Entities and

Individuals liable for amounts owed to Saint Alphonsus is justified based on principles of veil piercing.

## Count III
### Successor Liability and Veil Piercing
### CHS TX, Inc. and YesCare Corp.

59.     Saint Alphonsus incorporates all previous allegations as though fully set forth herein.

60.     Substantially all of Corizon Health, Inc.'s assets were transferred to CHS TX, Inc. through the wrongful divisional merger, and therefore CHS TX, Inc. is a successor in interest to Corizon Health, Inc.

61.     This transfer of assets was made for the fraudulent purpose of escaping Corizon Health, Inc.'s substantial liabilities, including for amounts owed to Saint Alphonsus for medical care provided to inmates at the request of Corizon Health, Inc.

62.     CHS TX, Inc. is therefore liable as a successor in interest to Corizon Health, Inc. for the amounts owed to Saint Alphonsus.

63.     Sara Tirschwell—the director of both Corizon Health, Inc. and CHS TX, Inc.—is the sole director of YesCare Corp., which was formed in January 2022 and purchased CHS TX., Inc. after the wrongful divisional merger was completed.

64.     CHS TX, Inc. now does business as "YesCare" and holds itself out as a continuation of Corizon Health, Inc. For example YesCare's website claims it has "40+ Years of innovation, patient care and reentry services" and claims to have provided care for over 1,000,000 patients from "475+" correctional facilities across the county, even though YesCare Corp. was in January 2022. Thus, YesCare, Corp. has effectively stepped into the shoes of Corizon Health, Inc. for purposes of marketing while simultaneously dumping Corizon Health

Inc.'s extensive liabilities through the wrongful divisional merger.

65. YesCare Corp. has wrongly manipulated the corporate form to evade liabilities owed by Corizon Health, Inc. (now Tehum Care Services, Inc.), to evade a statute (namely the payment obligations imposed by Idaho Code § 20-237B), to justify a wrong, and to perpetrate a fraud. The unity of interest and ownership between YesCare Corp., Corizon Health, Inc. (now Tehum Care Services, Inc.) and its successor in interest, CHS TX., Inc. is to a degree that separate personalities no longer exist and if the acts of YesCare Corp. are not treated as acts of Corizon Health, Inc. and/or CHS TX, Inc., an inequitable result would follow.

66. Corizon, through its successor entity Tehum Care Services, Inc. has not paid Saint Alphonsus for medical services provided to IDOC inmates as required by amended Idaho Code § 20-237B from January 1, 2020 through September 30, 2021. As a direct and proximate result of Corizon's violations of Idaho Code § 20-237B, Saint Alphonsus has been damaged in an amount significantly in excess of $75,000, plus prejudgment interest and attorneys' fees and costs.

67. Holding YesCare Corp. liable for amounts owed to Saint Alphonsus is justified based on principles of veil piercing.

## DEMAND FOR ATTORNEY FEES

As a further direct and proximate cause of conduct of Defendants' conduct, Saint Alphonsus has been required to retain counsel for the purposes of prosecuting this action, and is entitled to recover all reasonable costs and attorneys' fees incurred in the prosecution of this lawsuit pursuant to various provisions of Idaho law, including, but not limited to, Idaho Code §§ 12-120(3), 12-121, 12-123, and Rule 54 of the Federal Rules of Civil Procedure, and any other applicable statute, rule, regulation, and/or contractual provision. Saint Alphonsus is further entitled to an award of reasonable attorney fees in the amount of $15,000 in the event of default.

## PUNITIVE DAMAGES

Saint Alphonsus reserves its right to seek leave to amend to assert a claim for punitive damages against Defendants pursuant to Idaho Code § 6-1604.

## PRAYER FOR RELIEF

WHEREFORE, Saint Alphonsus respectfully prays that this Court enter judgment against Defendants as follows:

1) For compensatory damages as defined by Idaho Code § 20-237B;

2) For attorneys' fees and costs;

3) For prejudgment interest pursuant to Idaho Code § 28-22-104;

4) For post judgment interest pursuant to Idaho Code § 28-22-104; and

5) For such other and further relief as the Court deems just and appropriate.

DATED this 3rd day of February, 2023.

DUKE EVETT, PLLC


By /s/Keely E. Duke
   Keely E. Duke, Of the Firm
   Molly E. Mitchell, Of the Firm
   *Attorneys for Plaintiffs*

**COMPLAINT -15**